**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROCIO LOPEZ and RACHEL LUMBRA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>L'OREAL USA, INC.,<br><br>Defendant. | Civil Action No.: 1:21-cv-07300-ALC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Rocio Lopez and Rachel Lumbra ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant L'Oreal USA, Inc. ("Defendant" or "L'Oreal"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit on behalf of purchasers of L'Oreal Collagen Products[1] (collectively, the "Products"). Defendant markets and sells the Products as "collagen" skincare that "restore [the] skin's cushion" and "smooth wrinkles." However, collagen as a topical product is worthless because it cannot penetrate the top layer of skin to provide such benefits. Accordingly, Defendant's representations regarding the skin-firming and anti-aging benefits of the Products are false and misleading.

---

[1] The L'Oreal Collagen Products include L'Oreal Collagen Moisture Filler Day/Night Cream and L'Oreal Fragrance-Free Collagen Moisture Filler Daily Moisturizer.

2. By way of background, collagen cosmetic products (like the L'Oreal Products at issue here) are beauty products that contain collagen, and that purportedly stimulate collagen synthesis and growth, leading to anti-aging benefits. The global collagen market was valued at $4.27 billion in 2018 and is expected to grow to $6.63 billion by 2025.[2] As a result, collagen has become a huge marketing tool to draw consumers into "anti-aging" or "healthy-aging" or products.

3. Collagen is the main structural protein in human connective tissues, most notably human skin. Collagen therefore serves as one of the main building blocks for bones, skin, hair, muscles, tendons, and ligaments.

4. The human body naturally makes collagen, but this production decreases with age. As humans enter their 20s and 30s, collagen production slows, triggering wrinkles and saggy skin.

5. Consumers therefore desire collagen skincare products, in theory, to replace the natural collagen organically lost by aging of the human body. Collagen is often sold as a supplement, like collagen peptide powders, capsules, or liquid.

6. Accordingly, collagen has become a popular beauty product ingredient that claims to improve the health and appearance of consumers' skin.

7. However, topical application of products containing collagen does not improve skin texture because collagen molecules cannot penetrate the epidermis.[3] This is because

---

[2] Grand View Research, *Collagen Market Size Worth $16.7 Billion by 2028*, https://www.grandviewresearch.com/press-release/global-collagen-market.

[3] L. Genovese, et al., An Insight into the Changes in Skin Texture and Properties following Dietary Intervention with a Nutricosmeceutical Containing a Blend of Collagen Bioactive Peptides and Antioxidants, https://www.karger.com/Article/Fulltext/464470.

collagen molecules, with a high molecular weight of 300 kDa (kilodaltons),[4] are too large to be absorbed into the skin when applied in a cream.[5]

8.     Defendant has therefore engaged in widespread false and deceptive advertising of its Products by claiming the Products are "collagen" that "restore [the] skin's cushion" and "smooth wrinkles." Every package of the Products prominently claims that the Products have these anti-aging and skin restoring qualities.

9.     Plaintiffs and Class Members purchased the Products designed, marketed manufactured, distributed, and sold by Defendant as containing "collagen" that "restore [the] skin's cushion" and "smooth wrinkles." Further, Plaintiffs and Class Members relied to their detriment on Defendant's representations that the Products would actually have an anti-aging effect on their skin. Plaintiffs and Class Members would not have purchased Defendant's Products – or, at minimum, would not have paid as much as they did to purchase them – had they known the Products were not actually capable of smoothing wrinkles or restoring the skin's cushion. Plaintiffs and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representations.

## PARTIES

10.     Plaintiff Rocio Lopez is a citizen of California, residing in Carson, California. Plaintiff Lopez purchased L'Oreal Paris Collagen Moisture Filler Day/Night Cream in May of 2021 at a Target store in San Rafael, California. Prior to her purchase of L'Oreal Paris Collagen Moisture Filler Day/Night Cream, Plaintiff Lopez reviewed the product's labeling and packaging

---

[4] *See* https://www.mdpi.com/2076-3921/9/2/181/htm?crsi=662497360&amp;cicada_org_src=healthwebmagazine.com&amp;cicada_org_mdm=direct.

[5] Inverse, *Do Collagen Supplements Work? A Scientist Splits Fact From Fiction*, https://www.inverse.com/article/59395-collagen-supplements-do-they-work.

and saw that the L'Oreal Paris Collagen Moisture Filler Day/Night Cream contained "collagen" that would "restore [the] skin's cushion" and "smooth wrinkles."  Plaintiff Lopez relied on the Product's labeling and packaging to choose the L'Oreal Product over comparable products.  Plaintiff Lopez saw these representations prior to and at the time of purchase, and understood them to mean that the L'Oreal Product contained "collagen" that would "restore [the] skin's cushion" and "smooth wrinkles."  Plaintiff Lopez relied on these representations and warranties in deciding to purchase her L'Oreal Product.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known these representations were not true.  However, Plaintiff Lopez has an intention to purchase the Product in the future if the Product is truthfully labeled.  In making her purchase, Plaintiff Lopez paid a substantial price premium due to the false and misleading collagen claims.  However, Plaintiff Lopez did not receive the benefit of her bargain because the L'Oreal Product did not, in fact, provide any anti-aging or skin-firming benefits.

11.    Plaintiff Rachel Lumbra is a citizen of New York, residing in Schenectady, New York.  Plaintiff Lumbra purchased L'Oreal Paris Collagen Moisture Filler Day/Night Cream in April of 2021 at a CVS Pharmacy in Schenectady, New York.  Prior to her purchases of L'Oreal Paris Collagen Moisture Filler Day/Night Cream, Plaintiff Lumbra reviewed the Product's labeling and packaging and saw that the L'Oreal Paris Collagen Moisture Filler Day/Night Cream contained "collagen" that would "restore [the] skin's cushion" and "smooth wrinkles." Plaintiff Lumbra relied on the Product's labeling and packaging to choose the L'Oreal Product over comparable products.  Plaintiff Lumbra saw these representations prior to and at the time of purchase, and understood them to mean that L'Oreal Products contained "collagen" that would "restore [the] skin's cushion" and "smooth wrinkles."  Plaintiff Lumbra relied on these representations and warranties in deciding to purchase the L'Oreal Products.  Accordingly, these

representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products on the same terms had she known these representations were not true. However, Plaintiff Lumbra has an intention to purchase the Product in the future if the Product is truthfully labeled. In making her purchase, Plaintiff Lumbra paid a substantial price premium due to the false and misleading collagen claims. Plaintiff Lumbra did not receive the benefit of her bargain because her L'Oreal Products did not, in fact, provide any anti-aging or skin-firming benefits.

12.     Defendant L'Oreal USA, Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in New York, New York. L'Oreal manufactures, sells, and/or distributes L'Oreal-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of the Products. L'Oreal manufactured, marketed, and sold the Products during the class period throughout New York and the entire United States. The planning and execution of the advertising, marketing, labeling, packaging, testing, and corporate operations concerning the Products and collagen claims was primarily carried out at L'Oreal's headquarters and facilities within New York. The policies, practices, acts and omissions giving rise to this action were developed in, and emanated from, L'Oreal's headquarters in New York, New York.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of states different from Defendant.

14.     This Court has personal jurisdiction over Defendant because it conducts

substantial business within New York, including the manufacturing, sale, marketing, and

advertising of the Products.  Defendant also maintains its corporate headquarters and principal

place of business in this judicial district.

## FACTUAL ALLEGATIONS

### A.     Collagen Products in the Beauty Industry

15.     Collagen is the most abundant protein the human body, making up an estimated

80% of the human skin.[6]  It is often referred to the as the "body's scaffolding," as it is the most

important structural protein in skin.  Plentiful levels of collagen in the human skin gives the skin

a firm, plump, and youthful look.[7]

16.     However, the presence of collagen in the human body is not everlasting.  With the

occurrence of smoking, sun exposure, and natural aging, collagen loss begins in a person's 20s.

17.     Loss of collagen over time leads to a decline in the structural integrity of the skin,

leading to the dehydration and thinning of the skin, causing wrinkles to form and joint cartilage

to weaken.

18.     As a result, collagen-based beauty products which purport to combat the natural

loss of collagen in the human body are becoming increasingly popular.  In fact, collagen protein

supplements recorded an increase in sales of 64% from June 2020 to June 2021, making up over

half of the total $107.9 beauty supplement sales during that time period.[8]

---

[6] Modere, *3 Reasons Why Collagen Creams Don't Work*, https://thelatest.modere.com/3-reasons-why-collagen-creams-dont-work/.

[7] *Id.*

[8] Emily Jarecki, *Collagen Beauty Supplements Expected to Continue Stellar Growth Through 2021*, https://www.nutraingredients-usa.com/Article/2021/07/16/Collagen-beauty-supplements-expected-to-continue-stellar-growth-through-2021.

19.     Similarly, topical collagen products are also increasingly popular.  These products purport to replace the body's natural loss of collagen by smoothing wrinkles and improving skin elasticity.

20.     However, topical collagen products are incapable of producing these desired effects.  This is because the molecules in topically-applied collagen are too large to fit through the uppermost layer of the skin, and therefore, cannot effectively cross the skin barrier to penetrate the skin.[9]  Moreover, no topical collagen product can stimulate and increase natural collagen production.[10]

21.     Thus, while there is some authority to suggest that ingesting collagen orally has some (mild) effect on skin hydration, elasticity and wrinkling, topical collagen products are simply worthless as they are incapable of having any anti-aging or skin-firming effects on the skin.[11]

**B.     Defendant's Misrepresentations Regarding The Products**

22.     L'Oreal sells, manufactures, and markets the Products as containing "collagen" that "restore [the] skin's cushion" and "smooth wrinkles."  On the front of the Products' Packaging, the products are touted as providing these anti-aging and skin-firming benefits:

---

[9] FutureDerm, *How Can I Rebuild Collagen?*, https://www.futurederm.com/how-can-i-rebuild-collagen/.

[10] Modere, *3 Reasons Why Collagen Creams Don't Work*, https://thelatest.modere.com/3-reasons-why-collagen-creams-dont-work/.

[11] Do-Un Kim, et al., *Oral Intake of Low-Molecular-Weight Collagen Peptide Improves Hydration, Elasticity and Wrinkling in Human Skin: A Randomized, Double-Blind, Placebo-Controlled Study*, https://pubmed.ncbi.nlm.nih.gov/29949889/.

 

23. The Products contain the following collagen, or collagen-related ingredients:

| Product | Preservative |
|---------|--------------|
| L'Oreal Collagen Moisture Filler Day/Night Cream | Soluble collagen, Atelocollagen |
| L'Oreal Fragrance-Free Collagen Moisture Filler Daily Moisturizer | Soluble collagen, Atelocollagen |

24. However, despite the presence of collagen in the Products, the Products are incapable of providing the touted benefits, and are therefore ineffective.

25. In pertinent part, atelocollagen has physical properties that are virtually identical to those in natural collagen.[12] Specifically, atelocollagen has an approximate molecular weight of 300 kDa, the same molecular weight as native collagen, which cannot penetrate the skin due to the size of the molecule.[13]

26. Similarly, soluble collagen has a high molecular weight of 231 kDa[14]— exponentially higher than the molecular weight of collagen-related derivatives that can

---

[12] *See* https://www.kokenmpc.co.jp/english/support/tecnical/collagen/index.html.

[13] *See* https://www.mdpi.com/2076-3921/9/2/181/htm?crsi=662497360&amp;cicada_org_src=healthwebmagazine.com&amp;cicada_org_mdm=direct.

[14] *See* https://academic.oup.com/jb/article-abstract/69/1/43/2184872?redirectedFrom=fulltext

potentially penetrate the skin.[15]

27.     Defendant's advertising and marketing of the Products is therefore false and misleading.  L'Oreal prominently advertises on the front label of the Products that they contain "collagen" that "restore [the] skin's cushion" and "smooth wrinkles."  Therefore, consumers reasonably expect that the Products will, in fact, provide skin-firming and anti-aging benefits.

28.     Defendant's misrepresentations and/or omissions violate consumers' reasonable expectations and, as alleged herein, New York and California's consumer protection statutes.

29.     Defendant as a worldwide leader in beauty and skin care products knew (or, at the very least, should have known) that the Products' express representations were false, deceptive, and misleading.

30.     Defendant employs professional cosmetic chemists and microbiologists to create and test the chemical formulas for the Products.  Therefore, Defendant knew or should have known that the Products are incapable of smoothing wrinkles and restoring the skin's cushion as warranted.

31.     On information and belief, Defendant did know that the Products were ineffective and unable to live up to their labeling claims, but chose to include the representations anyway because those labeling claims allow Defendant to sell the Products at a price premium compared to products that do not contain such claims.

32.     Had Defendant not made these false, misleading, and deceptive representations, Plaintiffs and Class Members would not have purchased the Products or, at minimum, would not have paid as much as they did for such products.  Thus, Plaintiffs and Class Members suffered an injury in fact and lost money or property as result of Defendant's wrongful conduct.

---

[15] *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7070905/.

## CLASS ALLEGATIONS

33.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

34.     Plaintiffs seek to represent a class defined as all people who purchased the Products that falsely advertised that the product purportedly contained "collagen" that "restore [the] skin's cushion" and "smooth wrinkles" during the applicable statute of limitations (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

35.     Plaintiff Rachel Lumbra also seeks to represent a subclass consisting of Class Members who reside in New York (the "New York Subclass").

36.     Plaintiff Rocio Lopez also seeks to represent a subclass consisting of Class Members who reside in California (the "California Subclass").

37.     The New York Subclass and the California Subclass will collectively be referred to as the "Subclasses."

38.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

39.  **Numerosity.**  The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of Members in the Class and in the Subclasses.  Although the precise number of Class and Subclass Members is unknown to Plaintiffs, it is known by Defendant and may be determined through discovery.

40.  **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all Members of the Class and Subclasses and predominate over any questions affecting only individual Class or Subclass members.  These common legal and factual questions include, but are not limited to, the following:

(a)     Whether Defendant made false and/or misleading statements to the consuming public concerning the benefits of the Products;

(b)     Whether Defendant's labeling and packaging for the Products is misleading and/or deceptive;

(c)     Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Products;

(d)     Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

(e)     Whether Defendant's omissions concerning the Products were likely to deceive a reasonable consumer;

(f)     Whether Defendant represented to consumers that the Products have characteristics, benefits, or qualities that they do not have;

(g)     Whether Defendant advertised the Products with the intent to sell them not as advertised;

(h) Whether Defendant falsely advertised the Products;

(i) Whether Defendant made and breached express warranties to Plaintiffs and Class and Subclass Members about the Products;

(j) Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiffs and Class and Subclass Members; and

(k) Whether Plaintiffs and Class and Subclass Members are entitled to damages.

41. With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated New York's General Business Law § 349, Deceptive Acts and Practices Unlawful; and New York's General Business Law § 350, False Advertising.

42. With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated California Civil Code § 1750, *et seq*., California's Consumers Legal Remedies Act; Business & Professions Code § 17500, *et seq*., California's False Advertising Law; and Business & Professions Code §§ 17200, *et seq*., California's Unfair Competition Law.

43. **Typicality.** Plaintiffs' claims are typical of the claims of the other Members of the Class and Subclasses in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the anti-aging benefits of the Products. All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

44.    **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Members of the Class and Subclasses.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclasses.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclasses.

45.    **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them.  Even if Class or Subclass Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

46.    In the alternative, the Class and Subclass may also be certified because:

(a)    the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass

Members would create a risk of adjudications with respect to them that would, as a practical

matter, be dispositive of the interests of other Class and Subclass Members not parties to the

adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to

the Class and to the Subclass as a whole, thereby making appropriate final declaratory and/or

injunctive relief with respect to the Members of the Class and to the Members of the Subclasses

as a whole.

**COUNT I**
**Violation Of New York's Gen. Bus. Law § 349**
**(On Behalf Of The New York Subclass)**

47.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations

contained in all preceding paragraphs of this complaint.

48.     Plaintiff Rachel Lumbra brings this claim individually and on behalf of the

Members of the proposed New York Subclass against Defendant.

49.     Defendant committed deceptive acts and practices by employing false,

misleading, and deceptive representations about the anti-aging benefits of its topical collagen

Products to mislead consumers into believing the Products would provide the touted benefits.

50.     Plaintiff Lumbra has standing to pursue this claim because she has suffered an

injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and

practices.  Specifically, Plaintiff Lumbra purchased the Products for her own personal use.  In

doing so, Plaintiff Lumbra relied upon Defendant's false, misleading, and deceptive

representations that the Products would smooth her wrinkles and restore her skin's cushion.

Plaintiff Lumbra spent money in the transaction that she otherwise would not have spent had she

known the truth about Defendant's advertising claims.

51.     Defendant's deceptive acts and practices were directed at consumers.

52.     Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the collagen Products would provide anti-aging benefits, when they do not. By advertising so prominently that the Products provide such benefits, Defendant proves that information about these benefits is material to consumers. If such information were not material, Defendant would not feature it prominently on the front label of the Products. As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of the Products to unsuspecting consumers across New York. If Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiff Lumbra and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

53.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations, Plaintiff Lumbra and other Members of the New York Subclass were injured in that they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about purported benefits of the Products were truthful.

54.     On behalf of herself and Members of the New York Subclass, Plaintiff Lumbra seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Violation Of New York's Gen. Bus. Law § 350
### (On Behalf Of The New York Subclass)

55.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

56.     Plaintiff Rachel Lumbra brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

57.     Defendant engaged in a campaign of false advertising with regard to the anti-aging benefits of the Products to mislead consumers into believing that the Products contain "collagen" that "restore [the] skin's cushion" and "smooth wrinkles."

58.     Plaintiff Lumbra has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff Lumbra purchased the Products for her own personal use.  In doing so, Plaintiff Lumbra relied upon Defendant's false, misleading, and deceptive representations that the Products would provide anti-aging benefits.  Plaintiff Lumbra spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

59.     Defendant's deceptive acts and practices were directed at consumers.

60.     Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations.  If Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased the Products or would not have paid as much as they did for them.

61.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations, Plaintiff Lumbra and other Members of the New York Subclass were injured in that they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about topical collagen were truthful.

62.     On behalf of herself and Members of the New York Subclass, Plaintiff Lumbra seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT III**
**Breach Of Express Warranty**
**(On Behalf Of The Class And The New York Subclass)**

63.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

64.     Plaintiff Rachel Lumbra brings this claim individually and on behalf of the Members of the proposed Class and New York Subclass against Defendant.

65.     As the designer, manufacturer, marketer, distributor, and/or seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products contain "collagen" that "restore [the] skin's cushion" and "smooth wrinkles." Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff Lumbra and Members of the Class and New York Subclass.

66. In fact, the Products do not conform to Defendant's representations about anti-again and skin-firming benefits because the Products are incapable of providing such benefits. By falsely representing the Products in this way, Defendant breached express warranties.

67. On August 10, 2021, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendant a warranty notice letter that complied in all respects with U.C.C. 2-607. The letter provided notice of breach of express and implied warranties. The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiffs and all other similarly situated purchasers.

68. As a direct and proximate result of Defendant's breach, Plaintiff Lumbra and Members of the Class and Subclass were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the benefits (or lack of benefits) of the Products were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff Lumbra and Class and Subclass Members would not have purchased the Products or would not have paid as much as they did for them.

**COUNT IV**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**

69. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

70.     Plaintiff Lopez brings this claim individually and on behalf of the members of the California Subclass against Defendant.

71.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

72.     Plaintiff Lopez and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

73.     Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

74.     Plaintiff Lopez, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

75.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

76.     As alleged more fully above, Defendant has violated the CLRA by marketing the Products as containing "collagen" that "restore [the] skin's cushion" and "smooth wrinkles" even though topical collagen products are incapable of providing such anti-aging benefits.

77.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5) and (a)(7).

78.     The CLRA was enacted to protect consumers against such practices.  The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

79.     As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiff Lopez and other Members of the California Subclass suffered injury.

80.     On information and belief, Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

81.     On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of the false and misleading statements and material omissions regarding the anti-aging benefits of Defendant's Products, as alleged above and herein.

82.     Plaintiff Lopez and the members of the California Subclass have suffered harm as a result of these violations of the CLRA because they have paid monies for the Products that they otherwise would not have incurred or paid.

83.     Plaintiff Lopez and the California  Subclass Members seek compensatory damages, punitive damages, injunctive relief, attorneys' fees, and restitution of any ill-gotten gains due to Defendant's acts and practices in violation of the CLRA.

## COUNT V
### Violation of California's False Advertising Law ("FAL"), Business & Professions Code § 17500 *et seq.*

84.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

85.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and California Subclass.

86.     Defendant violated Business & Professions Code § 17500 by publicly disseminating false, misleading, and deceptive advertisements regarding the Products by advertising that the Products contained "collagen" that "restore [the] skin's cushion" and "smooth wrinkles," even though the Products are incapable of providing such benefits.

87. Defendant's false and misleading advertisements were disseminated to increase the sales of the Products.

88. Defendant should have known and did actually know that its advertisements for the Products were false, misleading, and deceptive because Defendant employs professional cosmetic chemists and microbiologists to create and test the chemical formulas for the Products. Defendant knew its advertisements would induce consumers to purchase the Products.

89. Plaintiffs and the members of the Class and California Subclass have suffered harm as a result of these violations of the FAL because they have incurred charges and/or paid monies for Products that they otherwise would not have incurred or paid.

## COUNT VI
**Unlawful Business Practices In Violation of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200 *et seq.* (Unlawful Practices)**

90. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

91. Plaintiff Lopez brings this claim individually and on behalf of the members of the proposed Class and on behalf of the California Subclass.

92. By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful, fraudulent, and unfair conduct.

93. Defendant has violated the UCL's proscription against engaging in *unlawful* conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9) as alleged above.

94. As more fully described above, Defendant's misleading marketing, advertising, packaging and labeling of the Products is likely to deceive reasonable consumers.

95. Defendant's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

96. Plaintiff Lopez and the members of the Class and Subclass have suffered harm as a result of the violations of the UCL because they have incurred charges and/or paid monies for a Product they otherwise would not have incurred or paid.

97. There is no benefit to consumers or competition from deceptively marketing and labeling the Products.

98. Plaintiff Lopez and the other Class and Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

99. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff Lopez and the other members of the Class and Subclass.

100. Defendant's violations of the UCL continue to this day.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendant as follows:

a. Certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass Members;

b. Declaring that Defendant's conduct violates the statutes referenced herein;

c. Finding in favor of Plaintiffs, the nationwide Class and the Subclass against Defendant on all counts asserted herein;

d. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e. Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

f. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all the money they are required to pay;

g. Awarding Plaintiffs and Class and Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

h. Ordering Defendant to pay pre-judgment interest on all amounts awarded;

i. Providing such further relief as may be just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: October 7, 2021          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Alec M. Leslie*
        Alec M. Leslie

Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150

Facsimile:  (212) 989-9163
Email: aleslie@bursor.com

**BURSOR & FISHER, P.A.**
Brittany S. Scott*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  bscott@bursor.com

**BURSOR & FISHER, P.A.**
Rachel L. Miller*
701 Brickell Ave., Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: rmiller@bursor.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Alec M. Leslie, declare as follows:

      1.     I am an attorney at law licensed to practice in the State of New York and a member of the bar of this Court. I am an associate at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

      2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Southern District of New York.

      I declare under the penalty of perjury under the laws of the State of New York and the United States that the foregoing is true and correct and that this declaration was executed at New York, New York this 7th day October, 2021.

*/s/ Alec M. Leslie*
Alec M.  Leslie