USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __9/27/2022_____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ROCIO LOPEZ**, *individually and on behalf of all others similarly situated*, and **RACHEL LUMBRA**, *individually and on behalf of all others similarly situated*,

                        **Plaintiffs,**

-against-

**L'ORÉAL USA, INC.,**

                        **Defendant.**

21-cv-7300 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge**

Plaintiffs Rocio Lopez and Rachel Lumbra sue on behalf of a putative nationwide class and state subclasses of L'Oréal consumers. Plaintiffs also sue on behalf of respective statewide classes. They allege that L'Oréal materially misled its customers about the nature of the collagen ingredients in its anti-aging products. Plaintiffs assert that Defendant marketed these products as anti-aging because of the collagen ingredient when L'Oréal knew that the collagen in these products could not sufficiently penetrate the skin to produce the purportedly anti-aging effects. Defendant moved to dismiss plaintiff's Amended complaint.

## BACKGROUND

At the center of this case is collagen, a coveted ingredient in many a healthcare and self-care product. Amended Complaint ("Am. Compl.") ¶ 18, ECF No. 10. So coveted, in fact, demand for collagen is a billion-dollar market, which analysts expect to remain so in the near future. *Id.* ¶¶ 2, 18. Collagen is a protein molecule found in human connective tissue. *Id.* ¶15. Plaintiffs allege collagen is "one of the main building blocks for bones, skin, hair, muscles, tendons, and ligaments." *Id.* ¶ 3. Although the human body naturally produces collagen, like many things, this process slows as we age. *Id.* ¶¶ 4, 16-17. Decrease in collagen production

"leads to a decline in the structural integrity of the skin, leading to the dehydration and thinning of the skin," resulting in wrinkles and sagging skin, two oft-maligned signs of aging. *Id.* ¶ 17.

In combating these conditions, consumers turn to skincare products promising "to replace the natural collagen organically lost by aging of the human body." *Id.* ¶ 5. Plaintiffs claim manufacturers seek to satisfy consumer demand by marketing collagen as a "beauty product ingredient" that can "improve the health and appearance of consumers skin." *Id.* ¶ 6. They allege that "topical collagen products are incapable of producing these desired effects." *Id.* ¶¶ 20-21. Because "the molecules in topically-applied collagen are too large to fit through the uppermost layer of the skin." *Id.* ¶ 20. Plaintiffs state that native collagen has a molecular weight of 300kDa, rendering it too large to be absorbed by the epidermis. *Id.* ¶ 25.

Despite this, Plaintiffs allege that Defendant L'Oréal, an international cosmetics manufacturer, offers skincare products claiming to do the impossible. *Id.* ¶¶ 22-32. Plaintiffs take issue with two of the Defendant's topical collagen products: L'Oréal Collagen Moisture Filler Day/Night Cream and L'Oréal Fragrance-Free Collagen Moisture Filler Daily Moisturizer (collectively, the "Products"). *Id.* ¶ 23. The Products contain "[s]oluble collagen" and "[a]telocollagen." *Id.* ¶¶ 23-26. The Products are packaged in a box with descriptive phrases and L'Oréal branding on the front of the package. The Products feature the term "COLLAGEN" in large letters with the phrase "MOISTURE FILLER" in smaller font appearing directly underneath. *Id.* at 8. The Day/Night Cream also features this phrasing "COLLAGEN MOISTURE FILLER" on the top of its package. *Id.* In addition, they feature the term "DAILY MOISTURIZER." *Id.* Directly below, the daily moisturizer phrase, the Day/Night Cream packaging states "Restore skin's cushion and smooth wrinkles." *Id.* It also states "Natural Collagen" below these claims. *Id.* The Fragrance-Free moisturizer carries similar phrases,

2

claiming to "Visibly smooth wrinkles" and "Restore skin's cushion." *Id.* Pictures of the Products included in the Amended Complaint are provided below.

 

Plaintiffs contend that the Products' packaging claims that these "anti-aging and skin-firming benefits" are a result of the "COLLAGEN." *Id.* ¶ 22. However, the topical collagen and collagen-related ingredients in the Products—"soluble collagen" and "atelocollagen"— each have a molecular weight too high to penetrate the skin. *Id.* ¶¶ 25-26. They note that "no topical collagen product can stimulate and increase natural collagen production." *Id.* ¶ 20.

Plaintiffs believe the Products "are incapable of providing the touted benefits[] and are therefore ineffective." *Id.* ¶ 24. Given this, they believe Defendant has perpetrated "widespread fraud." *Id.* ¶ 8. They claim that Defendant sells this product at a "price premium" when they knew or should have known these representations were "false, deceptive, and misleading." *Id.* ¶¶ 19, 11, 31. Plaintiff filed suit on August 31, 2021. Defendants now move to dismiss.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  When ruling on a Rule (12)(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and "draw all reasonable inferences in [plaintiff's] favor." *See, e.g.*, *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

## DISCUSSION

Plaintiff Lopez brings claims under New York law, and Plaintiff Lumbra brings claims under California law.  The Court will address the false advertising claims brought under New York and California law before turning to Plaintiff Lopez's express warranty claims.

**I.  Plaintiffs' False Advertising Claims**

*A.  New York Statutory Law*

Plaintiff Lopez brings claims under New York law, and Plaintiff Lumbra brings claims under California law.  Plaintiff Lopez brings suit under Sections 349 and 350 of the New York General Business Law.  GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" and GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce. GBL § 349–50.  To assert a claim under Sections 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (internal quotation marks and citations

omitted). "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349, and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (internal quotation marks and citations omitted).

B. *California Statutory Law*

Plaintiff Lumbra brings suits under California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*; False Advertising Law ("FAL"), Business & Professions Code §17500 *et seq.*; and Unfair Competition Law ("UCL"), Business & Professions Code § 17200 *et seq*. "The CLRA makes it unlawful to use 'unfair methods of competition and unfair or deceptive acts or practices' in the sale of goods or services to a consumer." *Lozano v. AT & T Wireless Servs.*, Inc., 504 F.3d 718, 730 (9th Cir. 2007) (quoting Cal. Civ. Code § 1770). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. The statute "is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of [the FAL]." *Lozano*, 504 F.3d at 731 (citing *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 561, 973 P.2d 527 (1999)). The FAL "prohibits the dissemination in any advertising medium of any 'statement' concerning 'real or personal property' offered for sale, 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'" *Hughes v. Ester C Co*., 930 F. Supp. 2d 439, 457, 466 (E.D.N.Y. 2013) (quoting Cal. Bus. & Prof. Code § 17500). To assert a claim for false advertising, "a plaintiff must allege that (1) the statements in the advertising are untrue or misleading, and (2) the defendants knew, or by the

exercise of reasonable care should have known, that the statements were untrue or misleading." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 873 (N.D. Cal. 2012).

    C. *The Misleading Requirement and the Reasonable Consumer Test*

"To prevail on their consumer fraud claims under New York and California law, Plaintiffs must establish that [Defendant]'s allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

Under New York law, to be misleading, the advertising in question must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). The primary evidence in a consumer-fraud case arising out of allegedly false advertising is . . . the advertising itself." *Fink*, 714 F.3d at 742. Though the issue of whether a reasonable consumer was misled by a business act or practice is normally a question of fact, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive [act or practice] would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (internal quotation marks and citations omitted).

Under California law, Plaintiff's claims under the CLRA, UCL, and FAL are subject to the reasonable consumer test. "Under the reasonable consumer standard, [Plaintiff] must 'show that members of the public are likely to be deceived.'" *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).

    D. *Application*

Plaintiffs claim the Products' labels use of the term "COLLAGEN" leads the consumer to believe that it is the collagen that achieves the anti-aging effects. But the Products contain

topical collagen, which cannot penetrate the skin.  Plaintiffs argue that the inability to penetrate the skin necessarily means that the products cannot produce the claimed anti-aging effects.  Defendant argues that this is a leap in logic, ignoring the interpretation that collagen could work to moisturize the skin.  Under this interpretation of the Products' labels, the collagen's inability to penetrate the skin does not render the packaging and its claims materially misleading.  Defendant has the better of this argument.  Taking Plaintiffs' allegations regarding topical collagen as true, Plaintiffs have not alleged that the other ingredients in the Products do not produce the claimed anti-aging effects.

Plaintiffs' more compelling claim is that Defendant's use of the term "COLLAGEN' is intended to associate the Products with the common understanding of collagen's cosmetic benefits.  She argues that had she known the collagen in the Products would not provide these cosmetic benefits, she would not have paid the price premium for the products.

The price premium theory of liability does not require Plaintiffs to make any claims regarding the efficacy of the product.  *See Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029 NSR, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015) ("Plaintiffs have also adequately alleged injury by claiming that they paid a price premium that they would not have paid if the products were not labeled "natural" or "all natural."); *Ackerman v. Coca–Cola Co.,* No. CV–09–0395 (JG), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate  representations.").  Similarly, under California law, "[a] claim under the FAL may be based on 'advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"  *Sabatano v. Iovate*

*Health Scis. U.S.A. Inc.*, No. 19 CV 8924 (VB), 2020 WL 3415252, at *3 (S.D.N.Y. June 22, 2020) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (alterations omitted)).

The narrow question, then, is whether a reasonable consumer could believe that the term "COLLAGEN" on the label referred to collagen molecules that provide cosmetic benefits. "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 714 F.3d at 742. Defendant argues that a consumer could reasonably believe the COLLAGEN referred to the use of the molecule as a moisturizing agent. They cite *Fink v.* for the proposition that "plausibility requires absence of other obvious alternatives. However, *Fink* does not go that far. *Fink* states that "[p]lausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink*, 714 F.3d at 741 (citing *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir.2011)).

Defendant's alternative explanation is not one "so obvious" as to render Plaintiffs' inferences unreasonable. A few courts in this district have contemplated similar factual scenarios. Plaintiffs in those cases brought false advertising claims under New York or California statutes alleging misleading representations in advertising. In those cases, defendants packaging made claims, whether express or through context, that misled consumers to associate their products with widely known benefits or attributes that the product did not provide. For instance, in *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 582 (S.D.N.Y. 2021), the product's name could have lead consumers to believe that its almonds were flavored through smoking. In *Mogull v. Pete & Gerry's Organics, LLC*, No. 21 CV 3521 (VB), 2022 WL 602971 (S.D.N.Y. Feb. 28, 2022), defendant's product name, website domain name, and varying claims

could plausibly lead a reasonable consumer to believe that their eggs did indeed come from free range chickens.

In *Colpitts*, defendant, a distributor of almond related products, sold "smokehouse" almonds. Plaintiff sued alleging that defendant misled consumers to believe that the almonds were prepared in a smokehouse. *Colpitts*, 527 F. Supp. 3d at 581. Defendant argued that a reasonable consumer could think that "smokehouse" referred to the almonds flavor. *Id.* at 580. The Court noted that the term "smokehouse" is "not a word commonly used to describe a flavor" but usually denotes food prepared via smoking in a physical structure. *Id.* at 581. In addition, the product's packaging provided no qualifications to note that "smokehouse" referred only to the flavor of the almonds and not the manner of preparation. *Id.* The Court ruled that plaintiff had a plausible claim under Sections 349 and 350.

In *Mogull*, plaintiff sued a distributor of eggs, arguing that the defendant's "free-range" labeled eggs were misleading. Defendant's packaging and website boasted about the benefits of "free-range" eggs to the consumer and the environment in which chickens that laid those eggs were raised. *Mogull*, 2022 WL 602971, at *3. The product label in question noted that the eggs were "Certified Humane Free Range." *Id.* Plaintiff argued that defendant's free-range claims were misleading because the "hens were crammed into henhouses 20,000 at a time, many which are unable to ever access outside space." *Id.* Plaintiff argued she relied on defendant's "free-range" representations and paid a premium for their product. Defendant argued that the "Certified Humane Free-Range" phrase on the packaging was not misleading because its eggs met the "Certified Humane" qualification. *Id.* The court rejected this rationale noting that the "'free-range' is displayed as a standalone phrase throughout defendant's packaging, and only appears once directly adjacent to 'Certified Humane.'" *Id.* The court concluded that "a

reasonable consumer would not understand 'free-range eggs' to convey that Nellie's eggs meet the 'Certified Humane' standard." *Id.*

Here, Plaintiff has plausibly alleged that the term "collagen" is associated with the skin-related benefits of the collagen molecule. The Products contain no qualifying language regarding the inability for the collagen or collagen-related ingredients to penetrate the skin. Instead, the language on the Products serve to further link the products with the benefits of collagen. The Products promise to deliver benefits by "smoothing wrinkles" and "restore skin's cushion." These benefits purport to reverse signs of aging, namely the dehydration and thinning of the skin, that are commonly associated with the decrease in production of natural collagen. The Products' name—COLLAGEN MOISTURE FILLER—also serves to reinforce this connection. In the cosmetics industry, a filler is commonly understood to as a substance used to reverse, albeit temporarily, the signs of aging on the skin by "filling in" wrinkles and plumping the face. *See Facial Fillers for Wrinkles*; MAYO CLINIC' *https://www.mayoclinic.org/tests-procedures/facial-fillers/about/pac-20394072* ("Facial fillers are substances injected into the skin to smooth wrinkles and make them less noticeable.") (last visited Sept. 1, 2022); *Dermal Fillers*, Cleveland Clinic, *https://my.clevelandclinic.org/health/treatments/22667-dermal-fillers* ("Dermal fillers plump up wrinkles, smooth lines and restore volume in your face.") (last visited Sept. 1, 2022).

It is wholly plausible that a reasonable consumer, shopping for cosmetics, saw a product named COLLAGEN MOISTURE FILLER, promising to "smooth wrinkles" and "restore skin's cushion," and associated this product with the cosmetic benefits of the collagen molecule.

## II.     Breach of Express Warranty under New York Law

Plaintiff Lopez claims that Defendant's representations breached an express warranty under New York law. Defendant's supporting memorandum does not address Lopez's express warranty claims. Accordingly, the Court declines to rule on this claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. The Clerk of the Court is respectfully directed to terminate ECF No. 18.

**SO ORDERED.**

Dated:   September 27, 2022
         New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**